UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ERIK M. UNDERWOOD,

                                        Plaintiff,

                    -against-

BANK OF AMERICA CORPORATION,

                                        Defendant.
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___ 1/12/2026 _

25-CV-5007 (JPC)(SN)

**REPORT AND
RECOMMENDATION**

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE JOHN P. CRONAN:

For more than seven years and in multiple forums, Plaintiff Erik Underwood has been seeking to protect his alleged rights in a Georgia state trademark registration for the mark E.R.I.C.A. Among other actions, he sued Bank of America in the U.S. District Court for the District of Colorado, alleging trademark infringement and false designation of origin under the Lanham Act, common law trademark claims, and unfair competition under Colorado and Georgia law. Plaintiff lost those claims, despite exercising all appellate relief. This action revives many of those claims, by relitigating the precise claims, recasting them in different dress, or presenting them under different legal theories. Accordingly, Bank of America moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Separately, Plaintiff moves for a preliminary injunction seeking a $100 billion constructive trust "to protect public investors from ongoing concealment and fraud" and to prohibit Bank of America from further commercial use of the E.R.I.C.A. mark. Compl., ¶¶ 10(j), 16.

I recommend GRANTING Bank of America's motion to dismiss and DENYING Plaintiff's motion for a preliminary injunction as moot.

**BACKGROUND**

### I.    Factual Background

The following facts are drawn from Plaintiff's complaint. See Compl., ECF No. 1. In 2009, Plaintiff developed an AI-based assistant called E.R.I.C.A. as part of his digital media platform My24HourNews.com. Compl., ¶17. E.R.I.C.A. was designed to provide personalized search capabilities, concierge services, and chatbot functionality. Id. In 2010, Plaintiff registered the E.R.I.C.A. trademark in Georgia and then licensed the E.R.I.C.A. mark to My24HourNews.com. Id., ¶ 18. Two years later, he launched a dedicated website, My24Erica.com, to host the E.R.I.C.A. search assistant services and secured a joint venture with AT&T to develop and scale the E.R.I.C.A. technology. Compl., ¶¶ 19-20.

In 2013, Plaintiff began discussions with Bank of America in which he disclosed certain features of E.R.I.C.A. Id., ¶ 3.[1] By 2015, Plaintiff expanded E.R.I.C.A.'s capabilities to enable e-commerce transactions. Id., ¶ 4. In 2016, Plaintiff met again with senior employees of Bank of America to explore potential partnership opportunities and again disclosed certain features and aspects of E.R.I.C.A. Id., ¶ 5. Shortly thereafter, Bank of America began pursuing a federal trademark registration for the E.R.I.C.A. mark in connection with its mobile banking technology. Id., ¶ 6.

As part of its trademark application process, Bank of America reviewed existing uses of the E.R.I.C.A. mark, including Plaintiff's Georgia registration. Id., ¶ 7. In November 2016, Bank of America began promoting a new AI virtual assistant branded E.R.I.C.A. for integration into its mobile platform. Id., ¶ 9. Aware of Plaintiff's prior registration, the Bank internally tested alternative names—including "Addy," "Kira," and "Bank of America Assist" before ultimately

---

[1] Starting on page 15 of the Complaint, after paragraph 20, the paragraphs start over at number 1 and then continue through paragraphs 154. Citations are to the paragraphs as enumerated by Plaintiff.

2

launching E.R.I.C.A. in 2018, calling it a "transformative digital financial assistant." Compl., ¶¶ 9-10. Plaintiff alleges that, given Bank of America's market power, he could not effectively market his own E.R.I.C.A. software. He objected to the Bank's use of the E.R.I.C.A. name, and Bank of America invited him to New York to discuss a potential resolution. Id., ¶¶ 13-14. At the same time, however, Bank of America finalized its trademark application with the USPTO and registered it in July 2018. Id., ¶ 15. Bank of America's trademark counsel submitted sworn declarations asserting that Bank of America was the rightful owner and first user of the mark. Id.

Plaintiff later contacted GoDaddy.com seeking a declaration confirming his prior use of the website My24Erica.com. Id., ¶ 21. GoDaddy declined, citing company policy to not participate in legal declarations or get involved in lawsuits. However, in March 2019, an attorney from Debevoise & Plimpton contacted GoDaddy regarding Plaintiff's account and was connected with employee Keena Willis. Id., ¶ 22. Willis then signed a declaration prepared by Debevoise & Plimpton stating that Plaintiff's website was not hosted on GoDaddy in 2015 or 2016 and was first activated in June 2018.  Id., ¶ 28.

## II.     Prior Proceedings

Plaintiff outlines much of his efforts to protect his alleged trademark rights in his complaint, while Bank of America raises some prior proceedings as part of its claim that Plaintiff's trademark claim is "exceptional," such that attorney's fees are warranted. The Court describes them briefly here for context.

In August 2018, Plaintiff petitioned the USPTO's Trademark Trial and Appeal Board (TTAB) to cancel Bank of America's registration of the E.R.I.C.A. mark. The TTAB suspended those proceedings once Plaintiff filed his Georgia State court action in 2024.

In September 2018, Plaintiff filed suit in the United States District Court for the District of Colorado asserting claims for trademark infringement, false designation of origin, and unfair competition under the Lanham Act and related state-law claims. See Underwood v. Bank of America Corp. ("Underwood I" or the "Colorado Action"), No. 18-cv-2329 (RM)(MEH) (D. Colo. Sept. 11, 2018), ECF No. 1 ("Colo. Compl."). The Colorado district court granted Bank of America's motion for partial summary judgment on its counterclaim and ordered cancellation of Plaintiff's Georgia registration. See Underwood I, 2019 WL 8375952 (D. Colo. Aug. 16, 2019). The district court held that the Georgia registration was improperly issued because Plaintiff had not used the mark in commerce in Georgia when he first filed his trademark application. Id. at *4. Later, the Colorado district court granted Bank of America's motion for summary judgment on the remaining claims, holding that Plaintiff lacked any legally protectable trademark rights. See Underwood I, 2020 WL 616358, at *2-3 (D. Colo. Feb. 10, 2020). The Court found insufficient analogous use of the E.R.I.C.A. mark and rejected Plaintiff's assertion of rights based on the domain name of My24Erica.com. Id. Plaintiff appealed both grants of summary judgment, and the Court of Appeals for the Tenth Circuit affirmed the district court's holding but remanded for the limited purpose of determining whether Plaintiff had established protectable rights in the E.R.I.C.A. mark through the actual use in commerce. Underwood v. Bank of America Corp., 996 F.3d 1038, 1051, 1057-58 (10th Cir. 2021).

On remand, the Colorado district court granted summary judgment for Bank of America, finding no protectable rights, and the Court of Appeals affirmed. Underwood I, 2022 WL 3212929, at *2-3, aff'd, No. 22-1402, 2024 WL 1670592 (10th Cir. Apr. 18, 2024), pet. for rehearing and rehearing *en banc* denied (10th Cir. May 28, 2024), pet. for *cert*. denied, 145 S. Ct. 439 (2024).

In addition, Plaintiff has pursued actions concerning the E.R.I.C.A. mark in several other forums, including: (1) Underwood v. Godaddy.Com LLC and Bank of America Corp., et al., No. CV2022-014389 (Maricopa Super. Ct.), which was dismissed with prejudice in 2023; (2) Underwood v. State of Georgia, No. 24CV007809 (Fulton Super. Ct.), which was dismissed in 2024 and is now pending appeal to the Georgia Court of Appeals; (3) Underwood v. Bank of Am. Corp., No. 24-1892 (Fed. Cir. June 30, 2025); and (4) more than a dozen applications in Fulton County, Georgia Magistrate Court for arrest warrants of Bank of America executives and its counsel.

## III.    This Proceeding

Plaintiff filed this action in June 2025, asserting claims for: trademark infringement (Count I); securities fraud (Count II); violations of  the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count III); constructive trust (Count IV); fraud (Count V); breach of confidence/misappropriation of trade secrets (Count VI); unjust enrichment (Count VII); unfair and deceptive trade practices (Count VIII); conversion (Count IX); tortious interference with business relationships (Count X); violation of the Computer Fraud and Abuse Act (Count XII[2]) and the Georgia Computer Systems Protection Act (Count XIII); defamation (Count XIV); and abuse of process (Count XV). Plaintiff also filed an *ex parte* emergency motion for a preliminary injunctive, seeking to put Bank of America's assets into a constructive trust and an injunction on its use of the E.R.I.C.A. trademark.

Bank of America moved to dismiss, arguing that Plaintiff's claims are barred by *res judicata*, otherwise precluded, or fail to state a claim. The Court directed Plaintiff to file an opposition by September 24, 2025. Rather than do so, Plaintiff moved to strike the motion to

---

[2] The Complaint skips from Count X to Count XII; there is no Count XI.

dismiss or, in the alternative, to stay all dispositive proceedings pending resolution of his motion to disqualify Bank of America's counsel. The Court denied the motion to strike, explaining that any motion to disqualify need not be resolved at the motion-to-dismiss stage, which turns solely on the sufficiency of the allegations in the Complaint.

As a courtesy, the Court granted Plaintiff leave to further file a substantive opposition to Bank of America's motion to dismiss by October 1, 2025. Plaintiff again failed to do so and instead appealed the denial of his motion to strike to the Court of Appeals, where the appeal remains pending.

## DISCUSSION

### I.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must allege sufficient facts . . . to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). In reviewing such a motion, courts "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

The "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The Court must, however, examine a *pro se* plaintiff's complaint "for factual allegations sufficient to meet the plausibility requirement." Hill, 657 F.3d at 122; see Twombly, 550 U.S. at 570 (a complaint must allege "enough facts to state a claim for relief that is plausible on its face"). Courts "are obligated to draw the most favorable inferences that [a *pro se*] complaint supports,"

6

but "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618

F.3d 162, 170 (2d Cir. 2010). The Court will not assume the truth of legal conclusions or

conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

## II.    Plaintiff's Claims for Trademark Violation (Count I) and Unfair and Deceptive Trade Practices (Count VIII)

Plaintiff alleges federal trademark infringement and unfair competition under 15 U.S.C.

§§ 1114 and 1125. Compl., ¶ 61. He claims he owned a valid Georgia state trademark and

common law rights in the E.R.I.C.A. mark, for which he is the senior user and rightful owner. Id.

¶ 63. Plaintiff also alleges that Bank of America violated the Georgia Fair Business Practices Act

and Georgia unfair competition law, claiming that Bank of America's use of the E.R.I.C.A. mark

misleads consumers as to the origin and sponsorship of the service. Id. ¶¶ 112-114. Bank of

America argues that *res judicata*, also known as claim preclusion, bars Plaintiff's claims for

trademark infringement and unfair and deceptive trade practices.

"[I]t is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel

grounds on a Rule 12(b)(6) motion." Sassower v. Abrams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y.

1993) (citations omitted). "Dismissal based on *res judicata* or collateral estoppel is appropriate

where it is clear from the face of the complaint and from matters of which the Court takes

judicial notice that plaintiff's claims are barred." Bd. of Managers of the 195 Hudson St. Condo

v. Jeffrey M. Brown Assocs., 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009) (citation omitted).

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits

of an action precludes the parties or their privies from relitigating claims that were or could have

been raised in the prior action." Bordy v. Village of Port Chester, 345 F.3d 103, 113 (2d Cir.

2003). To establish claim preclusion, a party must show that "(1) the previous action involved an

adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with

7

them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted).

The first two elements are not controversial. In Underwood I, the Colorado district court granted summary judgment in favor of Bank America, dismissing all of Plaintiff's claims. See Underwood I, 2019 WL 8375952, at *4; 2020 WL 616358 at *2-3; 2022 WL 3212929 at *2-3. A grant of summary judgment constitutes an "adjudication on the merits for *res judicata* purposes." Smith v. City of New York, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015). Privity is also satisfied because the parties in this action are identical to those in the Colorado Action.

The third element—whether the claims in this case were, or could have been, raised previously—is also satisfied. Plaintiff asserts trademark infringement and unfair competition based on his asserted senior rights to the E.R.I.C.A. mark and Bank of America's alleged infringement. See Compl ¶¶ 61-68. He further alleges that Bank of America's use of the mark was a deceptive practice and constituted a fraudulent appropriation of his claimed rights. See id. ¶¶ 112-117. These allegations mirror the claims he brought in Colorado, where Plaintiff similarly contended that he was the senior user of the E.R.I.C.A. mark and that Bank of America's conduct was intentionally misleading and likely to cause consumer confusion. See Colo. Compl., ¶¶ 51-73. The Colorado district court rejected those arguments. First, it granted partial summary judgment ordering cancellation of Plaintiff's Georgia trademark registration for lack of use in commerce. See Underwood I, 2019 WL 8375952, at *3-4. Then, it granted summary judgment on Plaintiff's remaining claims, holding that he had no protectable trademark rights in the E.R.I.C.A. mark based on insufficient analogous use and failure to establish rights through the My24Erica.com website. See Underwood I, 2020 WL 616358, at *2-3, aff'd in part, vacated in

8

part, 996 F.3d 1038 (10th Cir. 2021). The Court of Appeals affirmed those rulings but remanded solely to determine whether Plaintiff could establish protectable rights through actual use in commerce. Underwood I, 996 F.3d at 1057-58. On remand, the Colorado district court again granted summary judgment to Bank of America. Underwood I, 2022 WL 3212929, at *2.

Because Plaintiff's trademark and unfair competition claims were fully litigated and resolved on the merits in the prior action, they are barred here under claim preclusion. Accordingly, I recommend that the Court dismiss Plaintiff's claims for trademark violation (Count I) and claim for unfair and deceptive business practices (Count VIII).

### III. Plaintiff's Claims for Breach of Confidence/Misappropriation of Trade Secrets (Count VI), Unjust Enrichment (Count VII), Conversion (Count IX), Tortious Interference (Count X), and Fraud (Count V)

Similarly, Bank of America argues that Plaintiff's claims for breach of confidence/ misappropriation of trade secrets, unjust enrichment, conversion, tortious interference, and fraud are also barred by preclusion principles. According to Bank of America, these claims either could have been raised in Underwood I or amount to an impermissible collateral attack on that court's final judgment. See Monahan, 214 F.3d at 284.

Whether Plaintiff could have raised the claims in the previous action "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014). The Court must also consider "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. at 499 (citations omitted). Cases involving "essentially the same course of wrongful conduct" are not

automatically precluded; rather, courts look to whether "'facts *essential* to the second [suit] were [already] present in the first.'" Waldman v. Village of Kiryas Joel, 207 F.3d 105, 110 (2d Cir. 2000) (emphasis in original) (citations omitted). See, e.g., Coalition For a Level Playing Field, L.L.C. v. Autozone, Inc., 737 F. Supp. 2d 194, 208 (S.D.N.Y. 2010) (granting motion to dismiss and finding claims precluded that were "intertwined with the claims litigated" in prior action such that they "easily could have been brought" as part of the previous litigation).

Count VI is brought under Georgia common law and statutory law for breach of confidence and misappropriation of trade secrets. See O.C.G.A. § 10-1-761, et seq. Plaintiff pleads that between 2013 and 2016, he disclosed the concept and features of his E.R.I.C.A. assistant to Bank of America during his meetings under an implied duty of confidentiality, and that Bank of America misappropriated those ideas to launch its own E.R.I.C.A.-branded product. Compl., ¶¶ 100-101. Plaintiff further alleges that the information he provided Bank of America meets the definition of "trade secrets" under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761(4).

These allegations concern the same factual nucleus as Underwood I—namely, Plaintiff's claimed priority in the E.R.I.C.A. concept and mark, Bank of America's alleged misuse of that concept, and the purported appropriation of Plaintiff's idea to create Bank of America's E.R.I.C.A. virtual assistant. The facts necessary to bring a misappropriation claim were therefore available during Underwood I, and both claims arise from the same interactions, timeline, and conduct.

Additionally, this claim is time-barred because Georgia applies a five-year statute of limitations for misappropriate of trade secret claims. See Porex Corp. v. Haldopoulos, 644 S.E.2d 349, 352 (Ga. Ct. App. 2007) (citing O.C.G.A. § 10-1-766). Plaintiff alleges that he

10

learned that Bank of America was publicly launching the E.R.I.CA. platform in May 2018. Compl., ¶ 12. This lawsuit was filed more than five years later.

Count VII, for unjust enrichment under Georgia law, is likewise precluded. That claim rests on the assertion that Bank of America wrongfully appropriated Plaintiff's E.R.I.C.A. mark and obtained a direct benefit at Plaintiff's expense. Compl., ¶ 106. Moreover, Plaintiff alleges that Bank of America's "enrichment stems from wrongful acts (*trademark infringement*, breach of duty, etc.)." Id., ¶ 107 (emphasis added). The essential facts supporting the unjust enrichment claim were therefore available to Plaintiff in the Colorado Action and that claim is accordingly precluded.

It is also time-barred. Georgia applies a four-year statute of limitations for unjust enrichment claims. See Engram v. Engram, 463 S.E.2d 12 (Ga. 1995) (citing O.C.G.A. § 9-3-26). New York applies a six-year statute of limitations. See Ferring B.V. v. Allergan, Inc., 932 F. Supp. 2d 493, 513 (S.D.N.Y. 2013). Plaintiff alleges that the benefit Bank of America unjustly secured includes, among other things, "the entire ERICA digital assistant program." Compl., ¶ 106. Plaintiff claims the unjust enrichment started at the latest in May 2018, which is seven years before Plaintiff filed the complaint.

Plaintiff's conversion claim fails for all of the same reasons. Count IX asserts a claim under Georgia common law that Plaintiff has a "property interest in the ERICA mark," and that Bank of America "assumed dominion and control" over his property by registering the E.R.I.C.A. mark in its own name and excluding Plaintiff from using it. Compl., ¶¶ 118-19. These allegations repackage Plaintiff's trademark infringement claim from the Colorado Action. Accordingly, Plaintiff's claim for conversion is barred by *res judicata*. It is also untimely under Georgia law, which applies a four-year statute of limitations for conversion claims, see Logan v.

11

Tucker, 480 S.E.2d 860, 862-63 (Ga. Ct. App. 1997) (citing O.C.G.A. § 9-3-32), or under New York law, which applies a three-year statute of limitations. See Ferring, 932 F. Supp. 2d at 510.

Count X for tortious interference of contract asserts that Bank of America unlawfully interfered with a 2010 license agreement between Plaintiff and My24HourNews.Com, Inc. Plaintiff alleges that by appropriating the E.R.I.C.A. mark and causing the cancellation of the company's registration, Bank of America rendered performance of that license impossible and undermined the business relationship. Compl., ¶ 124. This claim likewise stems from the same alleged appropriation of the E.R.I.C.A. mark that was the focus of the Colorado Action. The existence of the license agreement and Bank of America's alleged awareness of it were facts available to Plaintiff during that litigation. The claim therefore arises from the same nucleus of operative fact and is barred by *res judicata.* The claim is also time-barred under Georgia's four-year statute of limitations, see Long v. A.L. Williams & Assocs., Inc., 323 S.E.2d 868, 870 (Ga. Ct. App. 1984) (citing O.C.G.A. § 9-3-31), and under New York's three-year statute of limitations, see Espire Ads LLC v. TAPP Influencers Corp., 655 F. Supp. 3d 223, 262 (S.D.N.Y. 2023).

Finally, Plaintiff's fraud claim under Georgia common law and statutory law, is precluded. Plaintiff alleges that Bank of America committed fraud by submitting a false sworn declaration from Willis to the courts and the USPTO, making false representations to the Georgia Secretary of State, and representing to Plaintiff that Bank of America lawfully secured the rights to the E.R.I.C.A. mark. Compl., ¶ 94. To the extent Plaintiff's allegations concern conduct before the commencement of the Colorado Action, those are claims Plaintiff could have raised in that proceeding and are barred by *res judicata*. As to Plaintiff's claim regarding Willis's alleged false declaration, Plaintiff raised those arguments in the Colorado Action via a Rule

12

59(e) motion requesting that the Court alter its final summary judgment order. The Colorado district court denied the motion and reaffirmed its final judgment. Having had a full and fair opportunity to litigate his claim of fraud, Plaintiff may not now collaterally attack the Colorado judgment by repackaging the same allegations as an independent fraud claim in a different forum. The Colorado court's denial of Plaintiff's Rule 59(e) motion constitutes a final judgment on the merits and precludes any fraud claim based on the alleged false declaration. These claims are also time-barred, whether analyzed under Geogia statutory law (four years), Georgia common law (four years) or New York common law (six years). See O.C.G.A. § 51-6-1; Anthony v. Am. Gen. Fin. Servs., Inc., 697 S.E.2d 166, 176 (Ga. 2010); Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).

Accordingly, I recommend that the Court dismiss Plaintiff's claims for misappropriation of trade secrets (Count VI), unjust enrichment (Count VII), conversion (IX), tortious interference (Count X), and fraud (Count V).

## IV.    Plaintiff's Claims for Securities Fraud (Count II)

Plaintiff brings claims for violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b), a plaintiff must allege:

> that, in connection with the purchase or sale of a security: (1) defendant[] made an untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; (2) defendant[] acted with scienter; (3) plaintiff[] justifiably relied on the misstatement tor omission; and (4) plaintiff[] suffered an economic loss as a result of the misstatement or omission.

S.E.C. v. Wyly, 117 F. Supp. 3d 381, 385-86 (S.D.N.Y. 2015) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)). "[T]he right to bring suit under § 10(b) of the Act [is] limited to actual stock buyers and sellers . . . ." Virginia Bankshares, Inc., v. Sandberg, 501 U.S.

13

1083, 1084 (1991) (internal citations omitted); <u>Menora Mivtachim Ins. Ltd. v. Frutarom Industries Ltd.</u>, 54 F.4th 82, 87 (2d Cir. 2022). Plaintiff was neither a purchaser nor a seller of Bank of America securities. Compl., ¶ 72. Accordingly, he lacks statutory standing to bring a claim under Section 10(b). I recommend that the Court dismiss Plaintiff's securities fraud claim (Count II).

## V.    Plaintiff's Claims for Violation of RICO (Count III)

Plaintiff alleges that Bank of America violated the RICO Act, 18 U.S.C. § 1962(c), by orchestrating a scheme to fraudulently invalidate his E.R.I.C.A. trademark. He asserts that Bank of America and its outside counsel Debevoise & Plimpton conspired with GoDaddy employees, including Willis, to obtain his confidential hosting and server data without legal process, fabricate evidence, and submit false declarations to the USPTO, TTAB, and the Colorado district court. Compl., ¶¶ 75-76.

To state a civil RICO claim, a plaintiff must show that each defendant (1) was employed by or associated with an enterprise engaged in interstate or foreign commerce; (2) directly or indirectly conducted or participated in the conduct of that enterprise's affairs; and (3) did so through a pattern of racketeering activity consisting of at least two predicate acts. <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009). Racketeering activity includes mail and wire fraud. 18 U.S.C. § 1961(1).

Plaintiff alleges that Bank of America and outside counsel engaged in a pattern of racketeering activity by conspiring to obtain Plaintiff's confidential hosting data and submitting a false declaration in federal trademark proceedings to invalidate his E.R.I.C.A. mark. Compl., ¶ 76. These alleged predicate acts are based entirely on Bank of America's purported misconduct during prior litigation and administrative proceedings. But allegations that a party or its attorneys

14

submitted false declarations, fabricated evidence, or otherwise engaged in litigation misconduct do not constitute predicate acts under RICO. See Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018). "Because predicates arising from abusive litigation tactics must allege something beyond conduct intrinsic to the litigation process, they are rarely successfully pleaded, and the few that pass muster involve much more than using a single litigation to carry out an alleged fraudulent scheme." Chester Park View, LLC v. Schlesinger, No. 23-cv-5432 (CS), 2024 WL 2785140, at *9 (S.D.N.Y. May 29, 2024) (citing Kim, 884 F.3d at 104). Plaintiff does not allege any extrinsic wrongdoing. The alleged scheme consists solely of the purported fabrication and submission of false evidence in judicial and administrative proceedings. This conduct, standing alone, does not transform litigation activity into racketeering. See Weaver v. Boriskin, 751 F. App'x 96, 98 (2d Cir. 2018) (summary order) (allegations that defendants "create[ed] and record[ed] a fraudulent assignment to show … standing to foreclose [plaintiff's] property" are not sufficient RICO predicates.) Accordingly, the alleged litigation conduct cannot, as a matter of law, constitute a pattern of racketeering activity under § 1962(c). Count III is also untimely under the four-year statute of limitations for civil RICO claims. See Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011).

I, therefore, recommend that the Court dismiss Count III.

## VI.     Plaintiff's Claims for Violations of the Computer Fraud and Abuse Act (Count XII) and Georgia Computer Systems Protection Act (Count XIII)

Plaintiff asserts claims under both the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a), and the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-93. He alleges that Bank of America accessed Plaintiff's GoDaddy-hosted server and domain data without authorization and under false pretenses. Compl., ¶ 130. Bank of America moves to

dismiss both claims on the ground that the Complaint does not allege conduct within the scope of either statute.

Section 1030(a) of the CFAA imposes liability on a person who:

(2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . (C) information from any protected computer;

[or]

(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value [in excess of $5,000].

18 U.S.C. § 1030(a). Thus, both provisions require that the defendant either acted "without authorization or "exceed[ed] authorized access." Id.

Plaintiff does not make that showing. The Complaint alleges only that a GoDaddy employee retrieved Plaintiff's hosting records at the request of Bank of America's counsel. Compl., ¶ 130. That allegation does not show that Bank of America itself accessed any computer system or caused unauthorized access, which is required to state a claim under the CFAA. Scottrade, Inc. v. BroCo Invs., Inc., 774 F. Supp. 2d 573, 583 (S.D.N.Y. 2011).

Even assuming the GoDaddy employee's conduct was actionable against Bank of America, Plaintiff does not allege facts suggesting that the employee lacked permission to access GoDaddy's internal hosting records.[3] Plaintiff alleges, at most, that the employee exceeded authorized access under the statute by accessing such information for an improper purpose. But "exceeds authorized access" is defined in the statute to mean "to access a computer without authorization and to use such access to obtain or alter information in the computer that the

---

[3] The Third Amended Complaint states that Willis's access of the hosting records "exceeded any authority granted by GoDaddy's internal policy" but the referenced policy concerns GoDaddy's practice of not providing declarations or becoming involved in customer's legal disputes. See Compl., ¶¶ 21, 31. As alleged, that policy does not restrict Willis's ability to view or access the hosting records, and Plaintiff does not allege that she lacked authorization to access those records.

16

accessor is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6). Courts in the Second Circuit have accordingly held that this definition does not extend to the misuse of information that a user was otherwise permitted to access in the first instance. JBC Holdings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 523 (S.D.N.Y. 2013) (collecting cases); but see Register.com, Inc. v. Verio, Inc., 126 F. Supp. 2d 238, 253 (S.D.N.Y. 2000) (interpreting "without authorization" to encompass accessing information for improper purposes). Plaintiff does not allege that the GoDaddy employee lacked permission to access the hosting records. Accordingly, Plaintiff has failed to allege that Bank of America accessed a computer system without authorization. In any event, a CFFA claim must be brought within two years of the date of the act or the discovery of the act. 18 U.S.C. § 1030(g). Thus, the claim is also time-barred.

Plaintiff's claims under the Georgia Computer Systems Protection Act fail for the same reason. Plaintiff relies on subsections (a) and (c) of the statute. Subsection (a) imposes liability when a person "uses a computer or computer networks with knowledge that such use is without authority and with the intention of" taking property of another. O.C.G.A. § 16-9-93(a). As discussed above, Plaintiff does not allege that Bank of America accessed any computer "without authority" let alone "with knowledge that such use" was without authority. See Wachovia Ins. Services, Inc. v. Fallon, 682 S.E.2d 657, 665-66 (Ga. Ct. App. 2009).

Subsection (c) prohibits an individual from "us[ing] a computer or computer network with the intention of examining any employment, medical, salary, credit, or any other financial or personal data relating to any other person with knowledge that such examination is without authority." O.C.G.A. § 16-9-93(c). The Complaint does not allege that Bank of America accessed or examined any personal data falling within the categories enumerated in the statute.

17

The claims under Georgia law are also time-barred. See O.C.G.A. § 16-9-93(g)(4) (imposing a four-year statute of limitations from discovery of the act).

Because Plaintiff fails to state a claim under both the CFAA and the Georgia Computer Systems Protection Act, I recommend that Counts XII and XII be dismissed.

### VII.     Plaintiff's Claim for Defamation (Count XIV)

Plaintiff alleges that Bank of America, through its counsel and GoDaddy personnel, made and disseminated false statements regarding his trademark rights and website activity in judicial and administrative filings, thereby damaging his reputation. He brings this claim pursuant to Georgia common law. Bank of America moves to dismiss the defamation claim on the grounds that the statements are absolutely privileged under Georgia law.

Georgia recognizes an absolute privilege for statements made in court filings, including those made in pleadings and related submissions. O.C.G.A. § 51-5-8; see also Renton v. Watson, 739 S.E.2d 19, 24 (Ga. Ct. App. 2013). Plaintiff argues that this privilege does not apply because the statements are fraudulent and malicious. But the statute is explicit that "[h]owever false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." O.C.G.A. § 51-5-8; see also Watson, 739 S.E.2d at 25 n.2. Accordingly, the allegedly defamatory statements Bank of America made in the relevant judicial and administrative proceedings are protected by absolute privilege under Georgia law.

I recommend that the Court dismiss Plaintiff's claim for defamation (Count XIV).

### VIII.     Plaintiff's Claim for Abuse of Process (Count XV)

Plaintiff brings a claim for "abuse of process" purportedly under federal law and Georgia law, alleging that Bank of America misused the legal process to harass and economically harm him. Because there is no federal common law tort for abuse of process, the Court construes the

claim as arising solely under Georgia law. See Berisic v. Winckelman, No. 03-cv-1810 (NRB), 2003 WL 21714930, at *2 (S.D.N.Y. July 23, 2003).

Georgia recognizes a single tort for abusive litigation, codified at O.C.G.A. § 51-7-80 et seq. Westinghouse Credit Corp. v. Hall, 144 B.R. 568, 578 (S.D. Ga. 1992). Under § 51-7-81, a person is liable for abusive litigation if he "takes an active part in the initiation, continuation, or procurement of civil proceedings against another" and acts (1) with malice; and (2) without substantial justification. O.C.G.A. § 51-7-81. "Malice" is defined as "acting with ill will or for a wrongful purpose." O.C.G.A. § 51-7-80(5). "Without substantial justification" is defined as any claim, civil proceeding, defense, or motion that is frivolous, groundless in fact or law, or vexatious. Id. § 51-7-80(7).

Plaintiff does not plausibly allege facts meeting either element. Nothing in the Complaint suggests that Bank of America used civil processes for a purpose other than adjudicating its trademark claims. Indeed, Bank of America prevailed on summary judgment in the Colorado Action, which strongly indicates that its positions were grounded in fact and law and therefore not "without substantial justification." As a result, the Complaint fails to state a claim for abusive litigation.

In addition, Georgia law imposes a mandatory condition precedent to bringing an abusive litigation claim: the plaintiff must provide written notice of the abusive litigation claim by certified or registered mail at least 30 days before filing suit. O.C.G.A. § 51-7-84(a); see also P&J Beverage Corp. v. Bottle Shop, LLC, 919 S.E.2d 671, 675 (Ga. 2025). Plaintiff does not allege that he sent the required notice, and Bank of America asserts—and Plaintiff does not dispute—that no such notice was given. Failure to comply with this notice requirement mandates

19

dismissal. See Stapler v. Boling, 815 S.E.2d 602, 606 (Ga. 2018); Merchant v. Mitchell, 525 S.E.2d 710, 711 (Ga. Ct. App. 1999).

I recommend that the Court dismisses Plaintiff's claim for abuse of process (Count XV).

## IX.    Plaintiff's Claim for Constructive Trust (Count IV)

Finally, Plaintiff seeks an imposition of a constructive trust under Georgia law over Bank of America's profits and value derived from its use of the E.R.I.C.A. trademark. Under Georgia law, however, "a constructive trust is a remedy created by a court in equity to prevent unjust enrichment" and is not an independent cause of action. St. Paul Mercury Ins. Co. v. Meeks, 508 S.E.2d 646, 648 (Ga. 1998). Because the Complaint does not state a viable underlying claim that could support the equitable imposition of a constructive trust, this remedy is unavailable.

I recommend that the Court dismiss Plaintiff's claim for a constructive trust (Count IV).

## X.    Plaintiff's Motion for a Preliminary Injunction

Because I recommend that the Complaint be dismissed in its entirety for failure to state a claim, I further recommend that Plaintiff's motion for a preliminary injunction be denied as moot. If the District Judge adopts this Report & Recommendation and enters judgment dismissing the action, no underlying claim will remain to support preliminary injunctive relief. See Jennifer Matthew Nursing & Rehab Ctr. v. U.S. Dep't of Health & Human Servs., 607 F.3d 951, 954 (2d Cir. 2010).

## XI.    Attorney's Fees

Bank of America seeks attorneys' fees under the Lanham Act. Section 35(a) of the Lanham Act permits reasonable attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). In determining whether a case is "exceptional" under the Lanham Act, courts consider the totality of circumstances, including "frivolousness, motivation, objective

unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 530 (2d Cir. 2018) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 n.6 (2014)).

Bank of America has made a strong showing that this case is "exceptional" within the meaning of § 1117(a). The majority of Plaintiff's claims are barred by *res judicata* and rest on trademark rights that multiple courts—including the District Court for the District of Colorado and the Court of Appeals for the Tenth Circuit—have repeatedly held Plaintiff does not possess. Notwithstanding those final adjudications, Plaintiff has continued to pursue claims related to his purported rights in the E.R.I.C.A. mark against Bank of America across multiple forums, culminating in this case. Plaintiff's Lanham Act claims have "no chance of success." PaySys International, Inc. v. Atos Se, 14-cv-10105 (DLC), 2019 WL 2051812, at *9 (S.D.N.Y. May 9, 2019). Under these circumstances, Plaintiff's pursuit of his Lanham Act claims is not only objectively unreasonable but reflects a troubling pattern of vexatious and duplicative litigation against the same defendant. An award of attorneys' fees may therefore be warranted to compensate Bank of America and to deter further abusive litigation conduct.

Plaintiff moved to hold in abeyance Bank of America's motion to dismiss until after the Court considered his motion to disqualify Bank of America's counsel. The Court denied that motion and Plaintiff declined the Court's invitation thereafter to oppose this motion to dismiss on the merits. Because a finding that this case is "exceptional" may result in a substantial attorneys' fees award, fairness warrants granting Plaintiff another opportunity to address the fee application.

21

Accordingly, within 14 days from a final decision dismissing Plaintiff's trademark claims, Plaintiff must file a letter setting forth his position on whether his position was "exceptional" under the Lanham Act such that an award of attorneys' fees is warranted. The parties should also discuss whether a non-monetary order may satisfy Bank of America.

## CONCLUSION

I recommend GRANTING the motion to dismiss in full and DENYING the motion for a preliminary injunction as moot.

SARAH NETBURN
United States Magistrate Judge

DATED:    January 12, 2026
New York, New York

*        *        *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable John P. Cronan if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Cronan. See Fed. R. Civ. P. 6(b). The failure to file

timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474

U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).